**ACCESS NOW, INC., a not-for-profit Florida corporation, et al., Plaintiffs,**

v.

**AMBULATORY SURGERY CENTER GROUP, LTD., Athens Community Hospital, Inc., et al.**

No. 99–109–CIV.

United States District Court, S.D. Florida, Miami Division.

May 19, 2000.

**524**

Miguel Manuel De La O, David Everett Marko, De La O & Marko, Miami, FL, for plaintiffs.

Jennifer Gayle Demberg, Greenberg Traurig, Miami, FL, Amy Wright Littrell, Youndy Christine Cook, Ford & Harrison, Tampa, FL, for Cedars Healthcare Group, Ltd.

Amy Wright Littrell, Youndy Christine Cook, Ford & Harrison, Tampa, FL, for other defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

SEITZ, District Judge.

This cause having come before the Court on the Plaintiffs' Motion for Class Certification [DE–41], and the Court being otherwise fully advised in the premises, states as follows:

## FINDINGS OF FACT AND LAW

Plaintiffs brought suit against Defendants in a one-count complaint for violations of Title III of the Americans With Disabilities Act, 42 U.S.C. § 12102, *et seq.* ("ADA"), on behalf of the Plaintiffs and all other similarly-situated persons, *i.e.* persons with disabilities as that term is defined by the ADA.

The class to be certified consists of:

All people in the United States with disabilities as that term has been defined by 42 U.S.C. § 12102(2), including those persons who have an impairment that substantially limits a major life function, including but not limited to mobility, hearing, and sight, who have been and who were, prior to the filing of the Class Action Complaint through the pendency of this action, entitled to the full and equal enjoyment of the goods, services, programs, facilities, privileges, advantages, or accommodations of any of the Defendants' Facilities, because of their respective disabilities (the "Class").

Certification of the class is exclusively for injunctive relief, and the Plaintiffs have fully satisfied the requirements of Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.[1]

---

1. *See Colorado Cross–Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354 (D.Colo.1999) (certifying class of persons who use wheelchairs and scooters in an action against a fast food chain for failing to comply with ADA Accessibility Guidelines and tracking Colorado state law); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 460 (N.D.Cal.1994), *modified,* 158 F.R.D. 439, 460 (N.D.Cal.1994) (certifying a class of disabled persons who used wheelchairs or who walked using aids that sought removal of architectural barriers in theaters pursuant to the ADA and tracking California state law); *Leiken v. Squaw Valley Ski Corp.*, 3 A.D. Cas. 945, 954 (E.D.Cal. June 28, 1994) (certifying a class of physically disabled persons who were denied full and equal access to, or who were dissuaded from visiting, a recreational resort because of certain architectural barriers and because of the defendant's policy of prohibiting persons who used wheelchairs from riding a cable car to one part of the resort); *Civic Ass'n of the Deaf of New York City, Inc. v. Giuliani*, 915 F.Supp. 622, 634 (S.D.N.Y.1996) (certifying a class consisting of persons with disabilities who were deaf or hearing-impaired that brought suit under the ADA to prevent the defendants from replacing fire alarm boxes on New York City streets with notification alternatives that were not accessible to deaf or hearing-impaired persons); *Anderson v. Pa. Department of Pub. Welfare,* 1 F.Supp.2d 456, 462 (E.D.Pa.1998) (certifying a class of participants with mobility and/or vision impairments that brought suit under the ADA to obtain certain accessibility improvements in a managed healthcare program); *Clark v. California,* No. C96-1486 FMS, 1998 WL 242688 at *6 (N.D.Cal. May 11, 1998) (refusing to decertify a class of developmentally-disabled inmates seeking certain accessibility improvements in a prison system pursuant, in part, to the ADA); *Neff v. VIA Metro. Transit Auth.,* 179 F.R.D. 185, 196 (W.D.Tex. 1998) (certifying a class consisting of individuals with disabilities covered by the ADA and Rehabilitation Act who were eligible to use the defendants' transportation services and facilities); *Thrope v. Ohio,* 173 F.R.D. 483, 491 (S.D.Ohio 1997) (certifying a class consisting of Ohio residents who purchased handicap parking placards, seeking, under the ADA, to force defendants to provide such placards without charge); *Berlowitz v. Nob Hill Masonic Management, Inc.,* No. C–96–01241 MHP, 1996 WL 724776 at *5 (N.D.Cal. Dec.6, 1996) (certifying a class consisting of all persons in California with physical disabilities who were denied the right to full and equal

## 1. The Requirements of Rule 23(a)

Before a class may be certified under Rule 23, the proponents of the class must establish that the class satisfies the prerequisites of Rule 23(a) and that the action itself qualified under at least one of the Rule 23(b) categories. The Rule 23(a) prerequisites are: (1) that the proposed class be so numerous that joinder is impracticable; (2) that the plaintiffs establish that there are questions of law or fact common to the class; (3) that the claims of the representative plaintiffs are typical of the claims of the class; and (4) that the named plaintiffs and the class counsel are adequate representatives for the class. *Fed. R.Civ.P.* 23(a). The Plaintiff Class herein satisfies the four requirements of Rule 23(a).

### A. Numerosity

■ The proposed class is so numerous that joinder is impracticable. *See e.g., Padron v. Feaver,* 180 F.R.D. 448, 449 (S.D.Fla. 1998) (certifying class of persons denied supplementary security income benefits and then referred to Florida Department of Children and Family Services, extrapolating from national statistics regarding the number of persons similarly denied benefits). Plaintiffs' action satisfies the numerosity requirement particularly in light of the enormity of the class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the financial resources of class members, and their ability to institute individual lawsuits.

According to the U.S. Census Bureau, at the end of 1994, 20.6% (+/-0.3) of the population, about 54 (+/-0.2) million people, had some level of disability; 9.9% (+/.02), or 26 (+/-.05) million people had a severe disability. *See* "U.S. Census Bureau, Americans With Disabilities: 1994-1995," and "U.S. Census Bureau, Disability—Census Bureau Data on Disability." Class members are spread across the United States and are present in all localities where Defendants' Facilities are located.

■ The existence of an identifiable class is an essential prerequisite to a class action. *See, e.g., Phillips v. Joint Legislative Comm.,* 637 F.2d 1014, 1022 (5th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982) (joinder impracticable in part because neither party could identify class members). Because millions of disabled people live independently (i.e., not in an institutional or group home setting), it would be oppressively difficult and ultimately impossible to identify each class member. "The very nature" of the class of persons with disabilities affected by the Defendants' architectural barriers and inaccessibility is "unknown" and cannot be "readily identified" and thus joinder of class members is impracticable. *Arnold,* 158 F.R.D. at 448. Rule 23 requires, however, in terms of class description, only that the class be sufficiently defined that potential class members can be identified. *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 382 (D.Colo.1993). A class is sufficiently identified if it is "administratively feasible for the court to determine whether a particular individual is a member." *Davoll v. Webb,* 160 F.R.D. 142, 143 (D.Colo.1995); *see also Colorado Cross–Disability Coalition v. Taco Bell Corp.,* 184 F.R.D. 354 (D.Colo. 1999). In this particular action, the court should have no problems in determining whether particular individuals presented to the court are members of the purported class, because the class extends to all disabled persons who are entitled to equal access to the Defendants' Facilities.

It is expected that most class members would not have the resources available, or the access to counsel willing to take a nonmonetary case, to litigate claims of the variety alleged herein individually. One of the "central concept[s] of Rule 23" is that a class action permits plaintiffs whose claims for damages are too small to justify the costs of litigation the ability to seek redress. *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 338 n. 9, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980);

access to, and use and enjoyment of, a concert arena in an action seeking removal of architectural barriers under the ADA and tracking state law); *Guckenberger v. Boston Univ.,* 957 F.Supp. 306 (D.Mass.1997) (certifying a class consisting of all students with learning disabilities and/or attention deficit disorder enrolled at Boston University suffering discrimination against the learning disabled).

see also *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 167–68, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (stating that because each member's stake in the litigation was only $70, no competent attorney would undertake an individual action and thus it should proceed as a class action). In the instant case, there are no monetary damages.

### B. Commonality

■ A number of common questions of law and fact exist in this case, because it involves architectural features in Defendants' Facilities that potentially present physical and communication barriers to access for disabled individuals.[2] The alleged existence of common discriminatory practices on the part of the Defendants satisfies the Rule 23 requirement of commonality. *See Walthall v. Blue Shield of Calif.,* 16 Fair Emp. Prac. Cas. (BNA) 626, 628, 1977 WL 34 (N.D.Cal. 1977) (minority employees sued insurance company employer alleging common issues of law and fact under Title VII). There need only be the allegation of a common discriminatory practice. *See Kraszewski v. State Farm Ins. Co.,* 27 Fair Emp. Prac. Cas. (BNA) 27, 29, 1981 WL 26982 (N.D.Cal.1981); *accord Arnold,* 158 F.R.D. at 449 (accommodation of disabled at theaters and legal adequacy of those accommodations are issues of law and fact common to all affected disabled persons); *Lightbourn v. County of El Paso, Tex.,* 118 F.3d 421, 426 (5th Cir.1997). It is enough that the application of the alleged exclusionary policy and structural barriers comprise a common nucleus of operative facts which supports certification. *See Leiken,* 3 A.D. Cases at 949.

Furthermore, the common course of conduct of the Defendants in relation to the Class also supports the commonality requirement. *See Civic Association of the Deaf,* 915

F.Supp. at 632–33 (plaintiffs described a common course of conduct by the Defendants in removing the street alarm boxes and in failing to provide adequate notification alternatives); *Berlowitz,* 1996 WL 724776 at *3 (holding that the commonality requirement was met in architectural barrier case, the court stated that the primary legal and factual questions revolve around the acts and omissions of defendants).

The Defendants are separately incorporated entities, affiliated but operationally and financially independent, all engaged in the provision of health care services or in operating facilities at which medical services are provided. The Defendants individually own or operate approximately three hundred and fifty (350) to four hundred (400) medical care facilities located throughout the United States, including specialty hospitals, outpatient care, rehabilitation hospitals, professional medical offices, surgical units, psychiatric hospitals, medical office buildings, and general services hospitals.

While the Defendants herein are not jointly owned or operated, they do share a unique link in the area of construction and building code (including ADA guidelines) compliance through a services agreement. Pursuant to this voluntary agreement, the Defendants have availed themselves of a common program of construction, design, and building code/ADA review, designed to minimize and eliminate potential areas of noncompliance with the requirements of building codes generally, and Title III of the ADA more specifically (and, where applicable, other more stringent accessibility codes).

It is a unique arrangement, which would have no effect or impact in an action brought under any law other than Title III of the ADA or which sought any relief other than

2. This does not mean that every issue must be common to the class so long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory. *See Joseph v. General Motors Corp.,* 109 F.R.D. 635, 639–40 (D.Colo.1986) (certifying class of current and former owners of particular model automobile). In fact, the "commonality requirements will be satisfied if the named plaintiffs share at least one question of fact or law with the grievance of the prospective class. Because the requirements

may be satisfied by a single common issue, it is easily met." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3rd Cir.1994) (certifying class of children in custody of human services that brought civil rights class action); *accord Day v. NLO, Inc.,* 144 F.R.D. 330, 333 (S.D.Ohio 1992), *rev'd on other grounds,* 5 F.3d 154 (6th Cir.1993) (certifying class of employees in action alleging negligent and intentional exposure of employees to radioactive materials).

that sought herein. This is because Title III imposes upon places of public accommodations of all types a set of objective guidelines in the form of the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") found at 28 C.F.R. Pt. 36 and Appendix and because Plaintiffs seek only injunctive relief in this matter. While it is true that the ADAAG is not an absolute requirement and cannot, due to variations in the physical structures, age, and operations of places of public accommodation, be applied in their entirety, the ADAAG do provide objective ranges and requirements against which all varieties of buildings may be judged for accessibility.

Furthermore, the decisions of these Defendants to seek a common program for design and construction services, including a program for ADA compliance, are sensible decisions. Such a common program is more efficient and less expensive for the Defendants and allows more resources to be devoted to the goals of compliance and facility improvement. Through this common program, the Defendants can take advantage of a concentrated pool of expertise as well as the bulk purchasing power they can command when purchasing construction related supplies or services in volume.

In the unique circumstances of the instant case, the Defendants are loosely associated for purposes of compliance with Title III through an agreement under which each has agreed to participate in a common program for design and construction services which includes, to a significant degree, reliance upon common guidance and direction for ADA and code compliance with respect to their individual facilities. While the Defendants herein are not engaged in "uniform conduct," they are all utilizing a common program and group of advisors in attempting to reach compliance with the requirements of Title III of the ADA (to the extent they have not already done so). This common program to which the Defendants have subscribed provides an additional grounds upon which this Court finds commonality in this proposed class.

Additional common questions of fact and law in this case include:

- Whether Defendants' Facilities are "public accommodations" under the ADA;
- Whether Defendants' Facilities deny the full and equal enjoyment of their goods, services, programs, facilities, privileges, advantages, or accommodations, and full and equal access to their Facilities to individuals with disabilities in violation of the ADA;
- Whether Defendants' Facilities provide goods, services, programs, facilities, privileges, advantages, or accommodations to individuals with disabilities in an integrated setting;
- Whether Defendants' Facilities have made reasonable modifications in policies, practices, and procedures when such modifications are necessary to afford such goods, services, programs, facilities, privileges, advantages, or accommodations to individuals with disabilities;
- Whether Defendants have failed to take steps to ensure that individuals with disabilities are not excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services;
- Whether Defendants have failed to remove architectural and communication barriers in existing facilities, where such removal is readily achievable and technically feasible, or have failed to make such goods, services, programs, facilities, privileges, advantages, or accommodations available through alternative methods, if removal of the barriers is not readily achievable or technically feasible; and
- What measures are legally required to bring Defendants' Facilities into compliance with the ADA.

No individual questions of law or fact exist.

### C. Typicality

█ The claims asserted by the representative Plaintiffs are typical of the claims of the class. The representative Plaintiffs are members of the class. The claims of the named Plaintiffs, however, need not be identical to those of the class; they need only be

similar and/or arise from the same remedial and legal theories. *See Arnold* 158 F.R.D. at 449; *accord Wilson v. Pennsylvania State Police Dep't,* No. CIV. A 94–CV–6547, 1995 WL 422750 at *3 (E.D.Pa. July 17, 1995) (police department's failure to accommodate individuals with disabilities as required by the ADA constituted a common question of law for class certification); *Caroline C. v. Johnson,* 174 F.R.D. 452, 464 (D.Neb.1996) (class certified in ADA case).

In this case, the representative Plaintiffs have the same interests and suffer the same injuries as the class members in that they are allegedly denied access to the same facilities as the class members and discriminated against as the result of the continued existence of physical barriers to access. Furthermore, the representative Plaintiffs, like the class members, seek injunctive relief requiring Defendants to modify each of their facilities, as well as build new facilities, in compliance with the ADA and the regulations promulgated thereunder. *See e.g., General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Due to their common interests and typical claims, the representative Plaintiffs fairly and adequately typify the claims and interests of the class members.

### D. Adequate Representation

The final requirement of Rule 23(a), adequate representation, requires that the representative Plaintiffs have common interests with the class members and that the representative Plaintiffs will fairly and vigorously prosecute the interests of the class through qualified counsel. *See Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 386 (D.Colo.1993). Adequate representation is usually presumed in the absence of contrary evidence. *See Id.* (*quoting* 2 Newberg § 7.24 at 7–80 to 81). The representative Plaintiffs in this case, like the members of the proposed Class, seek injunctive relief redressing the accessibility barriers that allegedly discriminate against them and the Class members. The representative Plaintiffs have suffered the same alleged injuries as the members of the Class and can adequately, fully, and fairly represent the Class

Members in claims for relief from those injuries. Furthermore, because there are no individual monetary damages sought, the interests of the representative Plaintiffs do not actually or potentially conflict with those of the Class. Those interests are identical, as the named Plaintiffs have allegedly suffered the exact violations of the ADA as other members of the Class and their interests in injunctive enforcement of the ADA are identical. And the requested relief-purely injunctive-will provide substantially equal benefits and relief to all members of the Class through increased accessibility and the coordinated removal of physical and communication barriers.

The representative Plaintiffs and their counsel have prosecuted, and will continue to prosecute, the interests of the class vigorously. Plaintiffs' counsel are qualified to represent the class and have the resources necessary to do so.

Miguel M. de la O, of the law firm de la O & Marko, P.A., has been an attorney since 1989. Prior to founding his own firm, he was an associate with Steel Hector & Davis (where he assisted in the defense of various class action lawsuits) and Sonnett, Sale & Kuehne. As senior litigation attorney at de la O & Marko, Mr. de la O has litigated over twenty ADA cases, more than half of which were against hospitals, as is the case here. He has substantial experience in both civil rights and commercial litigation areas. David Everett Marko, also a partner with the firm of de la O & Marko, P.A., has been a commercial litigation attorney since 1991. He has extensive ADA litigation experience, having brought and/or defended over thirty ADA cases, including numerous hospital cases. Mr. de la O and Mr. Marko have demonstrated their abilities both in the areas of disability rights and class action litigation. In addition, the law firm of de la O & Marko, P.A., has demonstrated that it has sufficient resources and staff to prosecute this litigation to its conclusion vigorously. De la O & Marko, P.A. are adequate class counsel.

### 2. Certification Under Rule 23(b)(2).

In addition to satisfying the prerequisites set forth in Rule 23(a), to have a class certi-

fied, class proponents must also establish that the proposed class action qualifies for class treatment under one or more of the options of Rule 23(b). Rule 23(b)(2) authorizes certification of a class of plaintiffs where the party opposing the class has "acted· or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole..." and where the class representatives are seeking such injunctive or declaratory relief. *Fed.R.Civ.P.* 23(b)(2).

The requirements of Rule 23(b)(2) are met by the allegations of the Plaintiffs which describe ADA violations and discriminatory practices of the Defendants to which the named Plaintiffs and members of the Class allege that they have been and continue to be subjected. The alleged violations of the statutory rights and the alleged discrimination suffered by the Plaintiffs as a result of the actions and/or inactions of the Defendants is substantially similar, if not identical, among members of the class, and class claims predominate over individual claims. Defendants have allegedly acted and continue to act on grounds generally applicable to the Plaintiff Class and affecting members of the Class in virtually identical ways.

A class action in which all members of the class complain of the identical architectural barrier necessarily involves acts that are generally applicable to the class. The Advisory Committee Notes to the 1966 amendment to Rule 23 demonstrate that subdivision (b)(2) was intended to reach precisely the type of class proposed in this case: "Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." *See* Advisory Committee Note to Rule 23(b)(2), 39 F.R.D. 98, 102 (1996); *Ticor Title Ins. Co. v. Brown,* 511 U.S. 117, 114 S.Ct. 1359, 1361, 128 L.Ed.2d 33 (1994). Rule 23(b)(2) has been liberally applied in the area of civil rights. Indeed, the Federal Rules Advisory Committee that drafted the amendments adding subpart (b)(2) to Rule 23 cited civil rights cases as the chief kind of action for which the (b)(2) category was cre-

ated. In *Ashmus v. Calderon,* 935 F.Supp. 1048 (N.D.Cal.1996), the court held that the subsection "was specifically drafted to facilitate vindication of civil rights particularly where, as here, that vindication can be remedied through injunctive relief." *Id.* at 1067. Subdivision (b)(2) of Rule 23 was specifically intended to encompass civil rights cases in which the primary relief sought is injunctive or declaratory in nature. This case is a "paradigm of the type of action for which the (b)(2) form was created" and thus the Class should be certified pursuant to Rule 23(b)(2). *See Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 452 (N.D.Cal.1994), *modified,* 158 F.R.D. 439, 460 (N.D.Cal.1994).

While Defendants deny that they have discriminated against the plaintiffs or the defined class, Defendants do not contest for purposes of this action that generally applicable regulations under the ADA govern their various operations (as well as the operations of all places of public accommodation) and that those generally applicable requirements would lead to conditions which are generally applicable to the plaintiffs as a group. The plaintiffs' complaint about the same categories of architectural barriers necessarily involves acts that are generally applicable to the class and therefore appropriate for 23(b)(2) treatment in this case. *See Arnold,* 158 F.R.D. at 452 (where class members all challenged defendant's failure to change certain architectural features found at its theaters, and the challenged features affected all class members in the same way, "this suit is a paradigm of the type of action for which the (b)(2) form was created").

## CONCLUSION

Plaintiffs have brought this action against a group of independently owned and operated, but loosely affiliated for purposes of Title III compliance, entities. All of these entities provide or house medical services. Plaintiffs have alleged that, as a class of disabled persons who are entitled to the full and equal enjoyment of the services and programs offered by the Defendants, they have been discriminated against (as that concept is understood within the context of the ADA) by

the Defendants, due to the various structural and operational barriers to disabled persons within the facilities of the Defendants. The Plaintiffs purport to a represent a numerous but identifiable class of all disabled persons, all of whom can be expected to have the same or similar claims, and all of whom are seeking the same or similar injunctive relief as to each facility. While each Defendant can be expected to have a different set of access issues under Title III for its facility, the factual issues will recur, and the same legal principles will apply in any event. The Plaintiffs have adequately alleged and offered support for each of the requirements supporting certification of a plaintiff class and for inclusion of the named defendants herein.

In light of the above findings of fact and law it is hereby:

ORDERED AND ADJUDGED:

1. Plaintiffs' Motion for Class Certification [DE–41] is **GRANTED**.

2. The Class, as described above, is hereby **CERTIFIED** pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

3. The Class will be represented by class counsel, de la O & Marko, P.A.