**David DAY, et al., Plaintiffs,**

v.

**NLO, INC., et al., Defendants.**

**No. C–1–90–67.**

United States District Court, S.D. Ohio, W.D.

June 22, 1992.

See also 798 F.Supp. 1322.

Thomas Joseph Kircher, Kircher, Robinson, Cook, Newman & Welch, Allen Paul Grunes, Paul M. De Marco, Waite, Schneider, Bayless & Chesley Co., Cincinnati, Ohio, for plaintiffs.

William Howard Hawkins, II, Frost & Jacobs, John Stephen Wirthlin, Sr., Beirne & Wirthlin, Cincinnati, Ohio, Herbert L. Fenster, McKenna, Conner & Cuneo, Washington, D.C., David M. Bernick, Kirkland & Ellis, Chicago, Ill., for NL Industries Inc.

William Howard Hawkins, II, Frost & Jacobs, John Stephen Wirthlin, Sr., Kevin T. Van Wart, Douglas James Kurtenbach, Beirne & Wirthlin, Cincinnati, Ohio, David M. Bernick, Kirkland & Ellis, Chicago, Ill., for NLO, Inc.

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

SPIEGEL, District Judge.

This matter is before the Court for consideration of the plaintiffs' motion for class certification (doc. 267). The defendants opposed the motion (doc. 271), and the plaintiffs replied (doc. 276). The Court conducted a hearing in this matter on June 12, 1992. For the reasons set forth below, the plaintiffs' motion for class certification is hereby granted pursuant to rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

## BACKGROUND

The defendants formerly operated the Feed Materials Production Center ("FMPC") located in Fernald, Ohio. The individual plaintiffs in this matter are former FMPC employees, independent contractors, frequenters or business invitees who frequently performed work at the FMPC, and their families.

The plaintiffs claim that the defendants operated the FMPC in such a way as to negligently or intentionally expose the plaintiffs to dangerous levels of radioactive and hazardous materials. As a result of this alleged exposure, the plaintiffs contend that their personal property has been damaged and that they now suffer severe emotional distress in the form of increased fear of cancer.

The defendants moved to dismiss the complaint as barred by the applicable statute of limitations. The statute of limitations was undoubtedly a threshold issue possibly disposing of the entire action. The defendants contended that the publicity generated by the *In re Fernald* litigation (Case No. C-1-85-149; filed January 23, 1985; settled September 29, 1989) and the materials furnished by the unions placed the plaintiffs on notice of any alleged overexposure by 1985. On the other hand, the plaintiffs claimed that the defendants and the United States Department of Energy intentionally concealed any overexposures under the guise of national security. Concluding that there were factual issues surrounding the plaintiffs' knowledge of the alleged overexposure, this Court ordered the parties to try the statute of limitations issue to a jury.

The statute of limitations trial commenced on September 16, 1991. For approximately seven weeks, the parties examined numerous witnesses and presented extensive evidence to the jury. After lengthy deliberation, the jury concluded that the claims of plaintiffs David Day, John Fitzgerald, Herbert Kelly, Hillery Webb, William Frey, and Ralph Jones were barred by the statute of limitations. In addition, they found that Julia Sansone's property damage claim was barred. Mr. Day, Mr. Fitzgerald, Mr. Kelly, Mr. Webb, Mr. Frey and Mr. Jones are all former FMPC employees. Mrs. Sansone's husband was a former FMPC employee. The jury concluded that her property damage claim was barred by the statute of limitations, but concluded that her emotional distress claim was not

barred.[1] Accordingly, the Court dismissed those claims. The Court has entered final judgment of dismissal on those claims pursuant to Rule 54(b) of the Federal Rules of Civil Procedure so that they may be appealed without delay. All other plaintiffs' claims remain pending in this Court.

The remaining plaintiffs now move for certification of three subclasses pursuant to Rule 23 of the Federal Rules of Civil Procedure. The defendants strenuously object to certification of any class in this action.

### RULE 23(a)

Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a) (1991 rev.). This Court will address each requirement of Rule 23(a) individually.

### A. Numerosity

As required by Rule 23(a)(1), a proposed class must be so numerous that joinder of all members is "impracticable." The plaintiff need not establish that it is impossible to join all members of the proposed class, only that it would be difficult and inconvenient to do so. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1762 (1986). In the case at bar, the FMPC operated for over 30 years at the Fernald, Ohio cite. During that time, thousands of former employees, contractors, frequenters and their family members were allegedly exposed to dangerous levels of radioactive materials. Accordingly, it would be impracticable to attempt a joinder of all potential class members.

The defendants urge this Court, without citation to legal authority, to consider only the number of former employees, their families, contractors and frequenters who have "bona fide claims." However, as noted by the United States Supreme Court, "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) (quoting *Miller v. Mackey International,* 452 F.2d 424, 427 (5th Cir.1971)). Accordingly, this Court must not attempt to determine whether potential class members will state "bona fide claims" at this stage of the proceedings. Instead, we must conclude that there is a sufficiently numerous group of plaintiffs in this action to make joinder of all of them impracticable.

### B. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant, and the general policy is the focus of the litigation." *Sweet v. General Tire & Rubber Co.,* 74 F.R.D. 333, 335 (N.D.Ohio 1976) (emphasis in original).

In the case at bar there are a number of common questions of law and fact. These common questions include the extent of dangerous FMPC emissions, the cause of those emissions, the precautions available to prevent such emissions, whether the defendants in this case took those precautions, whether the defendants knew of a dangerous condition yet failed to notify their employees, and whether the defendants can be held liable for negligent or willful misconduct or in strict liability for any alleged emotional distress caused to the plaintiffs. Accordingly, there are ques-

---

1. It should be noted that Mrs. Sansone admitted on the witness stand that she had no property damage claim.

tions of law and fact common to the class in this case.

### C. Typicality

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "To be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir.1976). The typicality requirement is intended to assure that the representatives' claims are similar enough to those of the class so that the representatives will adequately represent the class. *General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1764 (1986).

In the case at bar, every plaintiff in this class claims that the defendants negligently or intentionally exposed them to radioactive material thereby inducing a reasonable fear of cancer. In addition, many plaintiffs have claims for damage to personal property stemming from those same exposures to radioactive material. These claims all rest on the same alleged misconduct.

The defendants contend that the typicality requirement cannot be satisfied here because each representative plaintiff has a different exposure history, different medical history and different psychological composition. In addition, the defendants claim, the split verdict in the statute of limitations trial illustrates the individuality inherent in this case.

The Court must note that several courts "have been hesitant to find 'emotional injuries' typical." *Sanna v. Delta Airlines*, 132 F.R.D. 47, 50 (N.D.Ohio 1990); *see also Alvarado Morales v. Digital Equipment Corp.*, 669 F.Supp. 1173, 1185–86 (D.Puerto Rico 1987). However, "[D]ifferences in the situation of each plaintiff or each class member do not necessarily defeat typicality: 'The harm suffered by the named plaintiffs may differ in degree from that suffered by other members of the class so long as the harm suffered *is of the same type.'"* *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 65 (S.D.Ohio 1991) (quoting *In re Asbestos School Litigation*, 104 F.R.D. 422, 430 (E.D.Pa.1984)) (emphasis in original). Further, the United States Court of Appeals for the Sixth Circuit has specifically stated, "[W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988)..

In *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58 (S.D.Ohio 1991), residents within six miles of a radioactive materials plant attempted to recover against plant operators for emotional distress in the form of increased fear of cancer and for diminution in value of real property. In certifying a class in that case, the Honorable Joseph P. Kinneary stated:

> Clearly, people and parcels of real property, like snowflakes, necessarily have different and unique characteristics. The important question is to what extent those differences, when compared to the nature and extent of the shared characteristics of the named plaintiffs' and the class members' claims, will defeat the Court's ability to achieve a considerable efficiency through collective adjudication of those claims. Here, as in *Sterling [v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir.1988)]*, notwithstanding the differences, class treatment is clearly a better way to proceed.

*Boggs v. Divested Atomic Corp.*, 141 F.R.D. at 65.

In the case at bar, the similarity of the plaintiffs' claims, when compared to the differences in the individual plaintiffs' lifestyles and exposure histories, support the Court's ability to achieve efficient and just adjudication of the plaintiffs' claims. Further, the individual issues to which the defendants refer (most significantly the statute of limitations, medical histories and psychological compositions) can be effec-

tively addressed through some sort of claims procedure should the plaintiffs ultimately prevail in this action. Accordingly, the Court concludes that the claims of the representative parties in this action are typical of the claims of the class.

### D. *Representativeness*

■■■ Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." In determining the adequacy of the class representation, the Court must examine two factors: (1) the representatives must have common interests with the unnamed members of the class; and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter v. General Motors,* 532 F.2d 511 (6th Cir.1976). The first of these two factors substantially overlaps with the commonality and typicality requirements and merely acts to ensure that the representatives have interests co-extensive with, rather than antagonistic to, the interests of the unnamed class members. *See Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1768 (1986). The second factor requires that the representatives have a sufficient financial or personal involvement to encourage them to prosecute the action vigorously, and adequate financial resources and legal representation to meet the practical demands of maintaining a class action. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1767 (1986).

First, the representative plaintiffs in this action have interests nearly identical to those of the unnamed class members. The representative plaintiffs, like the class members in general, claim to have suffered property damage and severe emotional distress in the form of an increased fear of cancer due to the defendants' alleged misconduct in operating the FMPC. In addition, the representatives' diligence and participation exhibited during the discovery process and the seven week statute of limitations trial indicate that they will vigor-

ously protect the rights of the unnamed class members throughout the litigation.

Second, the representative plaintiffs have retained competent counsel with vast experience in class action litigation. The defendants challenge the adequacy of class representation, claiming that plaintiffs' counsel are witnesses with respect to the statute of limitations defense. However, the Magistrate Judge in this case has already quashed the subpoena duces tecum directed at plaintiffs' counsel. *See* Doc. 156. Accordingly, we conclude that the representative parties will fairly and adequately protect the interests of the class in this case.

### RULE 23(b)

■■ In order to maintain a class action, plaintiffs must satisfy one of the requirements of Rule 23(b) in addition to satisfying the prerequisites of Rule 23(a). Pursuant to Rule 23(b)(2), a class action may be maintained where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2) (1991 rev.).

■■ The plaintiffs in this action primarily seek relief in the form of a court-supervised medical monitoring program. The defendants contend that such relief does not constitute injunctive relief because the defendants will simply be required to pay money to finance the program. Therefore, the defendants claim, this is simply an action for damages, and rule 23(b)(2) is inapplicable.

Relief in the form of medical monitoring may be by a number of means. First, a court may simply order a defendant to pay a plaintiff a certain sum of money. The plaintiff may or may not choose to use that money to have his medical condition monitored. Second, a court may order the defendants to pay the plaintiffs' medical expenses directly so that a plaintiff may be monitored by the physician of his choice. Neither of these forms of relief constitute injunctive relief as required by rule 23(b)(2).

However, a court may also establish an elaborate medical monitoring program of its own, managed by court-appointed court-supervised trustees, pursuant to which a plaintiff is monitored by particular physicians and the medical data produced utilized for group studies. In this situation, a defendant, of course, would finance the program as well as being required by the court to address issues as they develop during program administration. Under these circumstances, the relief constitutes injunctive relief as required by rule 23(b)(2). *See Cook v. Rockwell Int'l Corp.,* 778 F.Supp. 512, 515 (D.Colo.1991) (Although it concluded that the rule 23(b)(2) issue was not ripe for decision, the court found such a medical monitoring program to constitute injunctive relief.); *Werlein v. U.S.,* 746 F.Supp. 887, 895 (D.Minn.1990) (Although the issue was not addressed in the rule 23(b)(2) context, the court concluded, "In a case where a number of persons are exposed to a toxin about which little is known, and it is necessary to gather and share information regarding diagnosis and treatment through screening, the Court would consider framing a medical monitoring and information sharing program as injunctive relief."); *see also Barth v. Firestone Tire & Rubber Co.,* 661 F.Supp. 193 (N.D.Cal.1987).

In the case at bar, the defendants allegedly caused all of the potential class members to be overexposed to radioactive materials through negligent or intentional misconduct. If the plaintiffs in this case ultimately prove their allegations, the class members will be entitled to injunctive relief in the form of an extensive court-supervised medical monitoring program. Therefore, we conclude that the party opposing class certification (the defendants) allegedly acted or refused to act on grounds generally applicable to the class for which final injunctive relief with respect to the class as a whole may be appropriate. Accordingly, the requirements of rule 23(b)(2) are satisfied in this case.

## CLASS DEFINITION

Having concluded that rule 23(a) and rule 23(b)(2) of the Federal Rules of Civil Proce-

dure are satisfied in this case, the Court must determine the appropriate class or subclasses to certify. The plaintiffs propose three subclasses: (1) Employees of defendant NLO who were employed by NLO at the FMPC and the unions representing said employees; (2) Frequenters, employees of employers or contractors other than defendant NLO and invitees who transacted business regularly, or for extended periods of time, on the premises of the FMPC from 1952 through 1985, and the unions representing said frequenters, employees of other employers or contractors and invitees; and (3) Families of persons identified in subclasses I and II. Because the defendants oppose class certification, they did not submit proposed class definitions.

The Court has several problems with the subclasses the plaintiffs propose. First, as to subclass I, the jury at the statute of limitations trial concluded that the statute of limitations bars the claims of employees who remained on the site and continued to receive union mailings in 1985. Thus, it would appear to this Court that NLO employees who remained on site or continued to receive union information in 1985 could not be included in the class action. Second, the Court is unsure why the unions should be included in either subclass I or subclass II. Third, proposed subclass II is too broad in that it includes every person, other than NLO employees, who set foot on FMPC property even one time during the more than thirty years of operation. Such an overly broad class definition would diminish the importance of the claims of those plaintiffs who were on site for extended periods of time, allegedly suffered dangerous overexposures and now suffer from the resulting emotional distress and fear. Fourth, the term "family" as used in subclass III must be more specifically defined. And, finally, no matter what subclasses are ultimately defined, they must exclude members of the class certified in the *In re Fernald* litigation, Case No. C–1–85–149. The class members in *In re Fernald* are already entitled to participate in the medical monitoring program established pursu-

ant to the settlement agreement in that case.

Therefore, the plaintiffs in this matter are hereby ordered to submit amended proposed class definitions and the reasons supporting those definitions no later than July 1, 1992. The defendants will then submit a counter-proposal on or before July 15, 1992.

## CONCLUSION

For the reasons set forth above, the plaintiffs in this case have satisfied the requirements of rule 23(a) and rule 23(b)(2) of the Federal Rules of Civil Procedure. The specific class definitions will be determined as soon as the parties submit their briefs and class definition proposals. In addition, this Court will conduct a final pretrial conference on December 2, 1992 at 10:00 a.m. A summary jury trial in this class action will commence on February 1, 1993, and trial on the merits will begin June 7, 1993.

SO ORDERED.