**Albert H. RUMPKE, Plaintiff,**

v.

**The RUMPKE CONTAINER SERVICE, INC., and Affiliates of Defined Benefit Pension Plan, Defendant.**

**No. C–1–00–524.**

United States District Court,
S.D. Ohio,
Western Division.

Sept. 6, 2001.

**206**

Paul Henry Tobias, Tobias & Kraus, David Donald Kammer, Tobias, Kraus & Torchia, Cincinnati, OH, for plaintiff.

Louis Francis Gilligan, Keating Muething & Klekamp, Cincinnati, OH, for defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiff's Motion for Class Certification (doc. 8), Defendants' Response (doc. 9) and Plaintiff's Reply (doc. 14).

Plaintiff, Albert Rumpke, Jr., filed a Complaint on June 28, 2000, alleging violation of Title 29 U.S.C. § 1132(b)(1)(a) (doc. 1). Defendants filed an Answer on August 28, 2000 (doc. 4). On January 1, 2001, Plaintiff filed the instant Motion for Class Certification (doc. 8). Defendants filed a Response on February 16, 2001 (doc. 9). Plaintiff filed his Reply on April 2, 2001 (doc. 14).

In order to properly analyze the issue before the Court, a review of the relevant factual issues of this case is required. The following facts have been derived from the various pleadings, motions, and discovery responses in this case.

The Rumpke Company (hereinafter, "Rumpke") is a family business that began operations in 1932 (doc. 9). The purpose of this business is waste disposal. The structure of this business entity is at the heart of this litigation. The customers of Rumpke are serviced by 35 route supervisors. These route supervisors are given a commission based on gross revenues by Rumpke and are responsible for all business conducted within an assigned geographic area (doc. 9). Approximately 800 drivers operate under the supervision of these route supervisors and are responsible for the actual waste collection within each assigned geographic region. Defendant contends that the route supervisors are independent contractors and that the drivers are employees of these route supervisors (doc. 8). Plaintiff contends that these route supervisors as well as their drivers are common law employees of Rumpke and as such are entitled to participation in Rumpke's pension plan created pursuant to the provisions of ERISA (doc. 8). Defendant denies this contention and asserts that since these route supervisors are independent contractors, Rumpke is under no obligation to allow either the route supervisors or their employees to participate in its ERISA Plan (doc. 9).

Plaintiff worked as a route supervisor for Rumpke from 1972 until 1989 (doc. 1). In this capacity, Plaintiff supervised a crew that operated trash collection trucks, as did all such route supervisors (*Id.*). Plaintiff contends that he also operated such trucks on his own (*Id.*). Rumpke owned and maintained all the trucks that the route supervisors and their drivers operated (Id.). Rumpke also paid for all the gas used and provided insurance for all of the trucks either used or supervised by the route supervisors (*Id.*). In his Complaint, Plaintiff asserts that Rumpke kept all of the company's books and was responsible for billing Rumpke customers.

There is no evidence of any written contracts between Rumpke and the route supervisors (doc. 9). Furthermore, Defendant contends that a number of the route supervisors have incorporated business entities to administer their routes and have established their own ERISA plans, 401(k) plans, and health plans for their employees (doc. 9). The route supervisors are also responsible for hiring and firing the employees who work their routes (*Id.*). These employees are paid from the commissions that the route supervisors receive (*Id.*).

Plaintiff contends that Defendants wrongfully misclassified Plaintiff and the proposed class as independent contractors instead of employees (doc. 8). According to Plaintiff, even though these employees were classified as independent contractors, they met the requirements for consideration as common law

employees, and as such, were entitled to participate in Rumpke's ERISA pension plan (*Id.*). Plaintiff is asking this Court to certify a class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, consisting of all current and former route supervisors and drivers of the Rumpke Company since the inception of ERISA in 1975.

■ The district court has broad discretion in deciding whether to certify a class. *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996). A class action may only be certified if the court is satisfied after a "rigorous analysis" that the prerequisites of Rule 23(a) have been met. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Maintainability as a class action may be determined by the pleadings, although ordinarily the court must probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met. *General Tel. Co.*, 457 U.S. at 160, 102 S.Ct. 2364; *In re AMS*, 75 F.3d at 1079.

■ The party seeking to utilize the class action device bears the burden of proof. *In re AMS*, 75 F.3d at 1079; *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). In order for a class to be certified, all four prerequisites of Rule 23(a) must be met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *In re AMS*, 75 F.3d at 1079. Once those prerequisites are met, then the party seeking certification must demonstrate that the action qualifies under at least one of the subcategories of Rule 23(b). *Id.*

Also, Rule 23 authorizes an action to be brought or maintained as a class action with respect to particular issues. Fed.R.Civ.P. 23(c)(4). Certification under Rule 23(c)(4), however, does not relieve the moving party from its burden of independently satisfying the requirements of Rules 23(a) and (b). Fed.R.Civ.P. 23(c)(4).

## I. Requirements of Federal Rule of Civil Procedure 23(a)

In order to proceed as a class action, the party seeking certification must demonstrate that

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). As no class action may be maintained without meeting these prerequisites, an analysis of these factors would be appropriate.

### 1. Rule 23(a)(1): Numerosity

■ The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be impracticable. Fed. R.Civ.P. 23(a)(1); *In re AMS*, 75 F.3d at 1079. The plaintiff need not demonstrate that it would be impossible to join all the class members; rather, he need simply show that joinder in this case would be difficult and inconvenient. *Day v. NLO, Inc.*, 144 F.R.D. 330, 333 (S.D.Ohio 1992); *see also Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 63 (S.D.Ohio 1991) (stating "[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required."). There is no strict numerical test used to determine whether joinder is impracticable. *In re AMS*, 75 F.3d at 1079; *Senter*, 532 F.2d at 523. Instead, the court must examine the specific facts of each case. *In re AMS*, 75 F.3d at 1079 (quoting *General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). In determining numerosity, the court "may consider reasonable inferences drawn from facts before him at the stage of the proceedings." *Senter*, 532 F.2d at 523.

Plaintiff proposes that this class consist of not only the route supervisors, of which he was one, but also all of the drivers employed by these route supervisors (doc. 8). According to Plaintiff, this number exceeds 800 individuals (*Id.*). Plaintiff also contends that in this jurisdiction, numerosity is generally satisfied by a class of 40 persons (*Id.*) (citing *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir.1976); *Afro American Patrolmen's League v. Duck*, 503 F.2d 294 (6th

Cir.1974)). Finally, Plaintiff asserts that with over 800 proposed class members, the numerosity requirement should be easily met (*Id.*).

■ If the proposed class were to consist of the drivers, as well as the route supervisors, the Court would certainly agree that the class would be so numerous as to make joinder impracticable. As will be discussed further below, however, Plaintiff is unable to establish that his claims are either common or typical of the claims of the drivers. As to the route supervisors, both parties agree that there are certainly less than forty such individuals. In the cases cited above by the Plaintiff, the Courts were faced with reasons, other than sheer numerosity, why joinder was impracticable. Here, all of the route supervisors can be easily located and identified. Plaintiff has presented no satisfactory reason why these individuals, if they are interested, could not simply be joined in the current lawsuit. The Court also finds it significant that not one individual route supervisor has been joined with Plaintiff in bringing this suit. Furthermore, Defendants have secured affidavits from almost every other route supervisor stating their preference to not be a part of this lawsuit. The Court simply cannot envision why it should certify a class consisting of members who number fewer than forty, who have all expressed an interest in not participating in this lawsuit, and who are all easily identifiable and presumably approachable about the subject of joinder by the Plaintiff. In sum, the Court concludes that the number of route supervisors in this particular case is not so numerous as to make joinder impracticable.

## 2. Rule 23(a)(2): Commonality

■ In order to satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The commonality requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant and the general policy is the focus of the litigation." *Day,* 144 F.R.D. at 333 (quoting *Sweet v. General Tire & Rubber Co.,* 74 F.R.D. 333, 335 (N.D.Ohio 1976)) (emphasis in original). The commonality test is qualitative, not quantitative. *In re AMS,* 75 F.3d at 1080 (citing 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions,* § 3.10 at 3–50 (3d ed.1992)). There need be only a single question of law or fact common to all members of the class. *Id.* "[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988).

Plaintiff maintains that the common factual and legal issues in this case are the legality of Defendants' misclassification of employment status and its failure to include the class as participants in the plan (doc. 8). Plaintiff correctly contends that "every class has factual differences in addition to features in common." (*Id.*). Plaintiff further contends, however, that these factual differences are insufficient to deny class certification where common issues predominate (*Id.*). According to Plaintiff, that common issue for this proposed class is simply whether they should have all been treated as employees of Rumpke (*Id.*). The Court notes that in the case of the drivers, liability will certainly hinge in significant part on whether the route supervisors are considered employees or independent contractors of Rumpke. The drivers are certainly employees of either the route supervisors or Rumpke. Whether they are classified as employees of Rumpke or as employees of the route supervisors will ultimately resolve the issue of whether they are entitled to participation in Rumpke's ERISA Plan. Therefore, if this issue is one common to all of the route supervisors, then it will necessarily be one common to the drivers as their status depends entirely on the status of their current employer, or supervisor as Plaintiff contends.

Plaintiff's own situation, however, demonstrates that this issue is not one common to the class as a whole. It appears from the evidence presented that Plaintiff was treated quite differently from other route supervisors. Indeed, all of the route supervisors may have been treated quite differently. The determination of whether a particular

individual is a common law employee is a factual determination made by looking at over thirteen factors. *Nationwide Mutual Ins. v. Darden,* 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). There the Supreme Court stated:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and the means by which the product is accomplished. Among the other factors relevant to this inquiry are the skills required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 323–24, 112 S.Ct. 1344. Plaintiff argues that a number of factors dictate a determination by this Court that all of the route supervisors are common law employees. Defendant notes, however, that a significant number of these only apply to Plaintiff (doc. 9). For example, Plaintiff is the only route supervisor who was prohibited from working other jobs, was the only route supervisor who did not have complete control over his employees, and was the only route supervisor to have his route taken away from him due to poor performance (doc. 9).

Furthermore, the claims of all of the route supervisors do not seem to be the same. For instance, some route supervisors are incorporated entities under the laws of Ohio and Kentucky. Some route supervisors have established their own health ERISA and/or 401k plans for their drivers. Finally, Plaintiff is not a current employee of Rumpke. Indeed Plaintiff wants to include all employees of Rumpke, current and past, since 1975.

Plaintiff's claims are simply not in common with the claims of all of the class members whom he wishes to include in his proposed class. This determination, of itself, prevents this Court from certifying Plaintiff's proposed class. In the interests of a thorough analysis, however, the Court will evaluate the other factors contained in Rule 23(a).

### 3. Rule 23(a)(3): Typicality

Rule 23(a)(3) also requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). A representative's claim need not always involve the same facts or law to be typical, provided there is a common element of fact or law. *Senter,* 532 F.2d at 525 n. 31. The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members. *In re AMS,* 75 F.3d at 1082 (citing 1 Newberg, *supra,* § 3.13, at 3–75). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (citing 1 Newberg, *supra,* § 3.13, at 3–76).

Plaintiff contends that his claims are typical of the class as a whole (doc. 8). In support of this contention, Plaintiff asserts that his claims "rest on the same factual and legal issues and are not dissimilar from the class in any respect." *(Id.).* Plaintiff is claiming that he was misclassified and wrongly denied participation in Rumpke's ERISA Plan *(Id.).*

The Court first concludes that Plaintiff's claims are not typical of the proposed class as related to the claims of the drivers. Plaintiff is not now, nor has he ever been a driver with the Rumpke Company. Even were the Court to agree that Plaintiff's claims possessed commonality with the drivers' claims, his would certainly not be typical. Whether or not Plaintiff's claims are typical of the claims of the route supervisors is a separate issue. As discussed above, the Court concludes that Plaintiff's claims are not in common with the other route supervisors in that Plaintiff was treated differently than those route supervisors. The analysis of typicality, however, requires that the

Court ensure that Plaintiff's interests are aligned with the proposed class and that he will take care to protect their interests.

The Court concludes that Plaintiff's claims are not typical of the class he proposes to represent. First, there is evidence before the Court that the remainder of the route supervisors do not wish to participate in this lawsuit and that their interests would be better served by continuing to do business as they have in the past. It appears that most, if not all, of the route supervisors have entered into a voluntary arrangement with Rumpke whereby they are considered independent contractors. Many of these route supervisors consider this their own business and have incorporated their businesses. Inclusion in Plaintiff's proposed class would involuntarily compel them to change this business structure.

The Court also concludes that the evidence that Plaintiff was treated differently than the other route supervisors as discussed in the commonality section is equally applicable here. Finally, Plaintiff has not worked for Rumpke for a number of years. Plaintiff can only gain by a determination that he was an employee of Rumpke. This cannot be said of route supervisors as a group. Plaintiff contends that a determination that they are employees can only benefit the class, as they will be entitled to benefits. Defendant has offered evidence, however, that these route supervisors have much to lose if they are classified as employees and that is why they have not chosen to join Plaintiff's class voluntarily. The Court concludes that for these reasons, Plaintiff's claims are not typical of those of the proposed class. Therefore, Rule 23(a)'s requirement of typicality is not met with Plaintiff's proposed class.

### 4. Rule 23(a)(4): Adequacy

 Finally, Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). There are two criteria for determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the inter-

ests of the class through qualified counsel." *Senter,* 532 F.2d at 525; *Cross v. Nat'l Trust Life Ins. Co.,* 553 F.2d 1026, 1031 (6th Cir. 1977) (stating Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."). This adequacy requirement overlaps with the typicality requirement. *In re AMS,* 75 F.3d at 1083.

The Court agrees with the Plaintiff that the attorneys Paul H Tobias, Esq. and David D. Kammer, Esq., can certainly represent this proposed class adequately. The Court notes Mr. Tobias' national reputation in the area of employment litigation and his forty-plus years of legal experience. The Court does not consider it an issue in this case whether Plaintiff's counsel are capable of adequately prosecuting this case.

There is an issue, however, as to whether Plaintiff himself can adequately represent the interests of the proposed class. Plaintiff contends that his intricate knowledge of the route supervisor position and driver position as well as his fifteen years of experience qualify him to adequately represent the proposed class in this case (doc. 8). Plaintiff contends that to the knowledge of Counsel, "no one has requested to be represented by separate counsel or has indicated an interest in prosecuting separate actions of these issues because they believe that the representation of their interest will not be adequate" (doc. 8). This analysis perhaps misses the mark. Defendants contend that Plaintiff's interests are hostile to the proposed class and that Plaintiff essentially seeks harm to the route supervisors who have established separate ERISA plans of their own (doc. 9). Defendants point to their presentation of 35 affidavits in which all thirty-five current route supervisors claim that they do not believe Plaintiff represents their interests and do not wish to participate in this lawsuit (doc. 9). Plaintiff asserted, however, during oral arguments before this Court, that he believed that these affidavits were the product of duress. Plaintiff has presented no satisfactory evidence to this Court, however, to establish that this is the case.

In light of these affidavits, and the assertions by Defendants that the vast majority of the route supervisors have always acted as independent contractors and wish to continue with such a classification, the Court is unable to conclude that Plaintiff is an appropriate class representative and will adequately protect the interests of this class of plaintiffs as a whole. It seems quite clear that the route supervisors for the Rumpke Company do not wish to participate in this lawsuit. This is further demonstrated by the fact that Plaintiff has apparently been unable to persuade even a single current route supervisor to join him in his lawsuit.

As to the drivers in the proposed class, Plaintiff has failed to demonstrate that he indeed has interests that are congruent with these individuals. It has been demonstrated that the drivers in the proposed class have various arrangements with their employers. Many of these drivers are already participating in pension funds provided by their employers, route supervisors. Plaintiff certainly cannot profess to represent their interests as he has never been a driver and as such has not participated in any employer created ERISA Plan. These individuals may have absolutely nothing to gain, except, perhaps, a determination by this Court that the entity for which they chose to employ themselves is not actually their employer, and that they are actually required to report to another entity and are eligible to participate in that entity's ERISA Plan. Indeed, the ERISA Plan of the Rumpke Company may not provide the same benefits as they are currently receiving. Therefore, the Court concludes that Plaintiff cannot adequately represent the interests of the drivers because he is not now and never has been a driver for the Rumpke Company. Furthermore, Plaintiff's interests are different and possibly antagonistic to those of the proposed class in that some of the class members are already being provided the very benefits Plaintiff seeks from Defendants and in some instances, the drivers may stand to lose benefits if Plaintiff ultimately prevails.

In conclusion, the route supervisors in this case have voluntarily chosen to structure their respective businesses in a way that is mutually beneficial to both themselves and the Rumpke Company. These individuals have made it clear that they do not wish to participate in this lawsuit. Even if the Plaintiff's claims are common to those of the route supervisors, which is the subject of some controversy, Plaintiff could not adequately represent their interests because they do not wish to participate in this lawsuit. If Plaintiff is correct that they do indeed wish to participate, the Court sees no reason why Plaintiff cannot simply join their claims with his own. The Court also concludes, based on the above analysis, that Plaintiff's claims are not in common or typical of the claims of the other route supervisors. Finally, the Court concludes that the number of route supervisors is not so numerous as to make joinder impracticable. The Court further concludes that even if the drivers in this proposed class wished to participate in this lawsuit, they should not be included in that Plaintiff's claims are not common to the class, are not typical of those of the drivers, and Plaintiff cannot adequately protect their interests. Accordingly, the Court concludes that this case is not proper for the formation of a class action as Plaintiff has failed to establish the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure.

Having reviewed this matter, the Court concludes that the requirements of Rule 23(a) of the Federal Rules of Civil Procedure are not met. As these requirements are a prerequisite to the formation of any class action, an analysis of the types of permissible classes would be futile. Therefore, the Court hereby DENIES Plaintiff's Motion for Class Certification (doc. 8).

SO ORDERED.